IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

SHEILA D. SMITH                                                                                          PLAINTIFF

v.                                       NO. 2:08CV00036 HDY

MICHAEL J. ASTRUE,                                                                                   DEFENDANT
Commissioner of the Social
Security Administration

MEMORANDUM OPINION AND ORDER

BACKGROUND. The record reflects that in February of 2005, plaintiff Sheila D. Smith ("Smith") filed applications for disability insurance benefits and supplemental security income benefits pursuant to the provisions of the Social Security Act ("Act"). Her applications were denied initially and upon reconsideration. She next requested, and received, a de novo administrative hearing before an Administrative Law Judge ("ALJ"). In October of 2007, the ALJ issued a decision adverse to Smith. She appealed the adverse decision to the Appeals Council. The adverse decision was affirmed by the Appeals Council and thus became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). In March of 2008, Smith commenced the proceeding at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Commissioner.

STANDARD OF REVIEW. The sole inquiry for the Court is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." See Id. at 1012.

THE COMMISSIONER'S FINDINGS. The Commissioner made findings pursuant to the familiar five step sequential evaluation process. At step one, the Commissioner found that Smith has not engaged in substantial gainful activity since the alleged onset date. At step two, the Commissioner found that Smith has a severe back impairment accompanied by a small annual tear at L5-S1 and bulging disks at L4-5 and L5-S1.[1] At step three, the Commissioner found that Smith does not have an impairment or combination of impairments that meet or equal a listed impairment. The Commissioner then assessed Smith's residual functional capacity and found that she is capable of performing the full range of sedentary work. In so finding, the Commissioner discounted two separate opinions offered by her treating physician, Dr. W.S. Winston ("Winston"), and discounted her complaints of pain. With regard to Winston's first opinion, the Commissioner found the following:

---

[1] Specifically, the Commissioner found the following: "[Smith] has the following severe impairments: degenerative disk disease and spondylosis of the lumbosacral spine. Clinical and laboratory findings ... show that ... Smith has a bulging disk and spondylosis at L4-5 which causes a mild indentation on the thecal sac. At L5-S1, there are present a bulging disk and a small annular tear. Suspected hemangiomas, of unknown pathological significance, have been identified at L4 and L5." See Transcript at 16.

> On January 7, 2003, [Winston] vaguely stated in a note, "Sheila Smith is unable to perform her job duties due to her illness." (Exhibit 12F). ... Winston did not describe ... Smith's 'illness' or how he arrived at his conclusion. According to Social Security law, this statement cannot be accepted on face value alone because it is not supported by clinical and laboratory findings. Therefore, little probative value will be assigned to it. ...

See Transcript at 18. The Commissioner appears to have discounted Winston's second opinion for a similar reason. See Transcript at 18-19. With regard to Smith's complaints of pain, the Commissioner found the following:

> ... The [Commissioner] has considered all the factors in Polaski, the regulations, and Rulings in evaluating [Smith's] subjective complaints and finds that [her] statements and testimony have aggrandized her pain and shortness of breath.
>
> ... Smith testified she was 44 years old and has a GED. She lived with her husband and 2 children. Her husband was disabled and received supplemental security income. Her 2 children also received Social Security benefits. ... Smith could clean her house. She did the laundry and cooked. She drove her children to school and picked them up from school. She shopped. She could take care of her personal problems. She received unemployment compensation. The undersigned observes in order for an individual to apply for and receive unemployment benefits, the individual must certify that he/she is actively seeking employment. This fact tends to indicate the individual is not disabled.
>
> The [Commissioner] concludes that the testimony of ... Smith is only fairly credible because it is inconsistent with the objective medical evidence and other evidence of record. Much in her case depends on the evidentiary weight placed on her credibility because she has alleged major limiting symptoms and only has some degenerative conditions of her lower back. Much in claimant's case depends on the evidentiary weight placed on her credibility because her case is based primarily on symptoms arising from few impairments. ...

See Transcript at 18. At step four, the Commissioner found that Smith cannot return to her past relevant work. At step five, the Commissioner found that, considering her age, education, work experience, and residual functional capacity in connection with the Medical-Vocational Guidelines ("Guidelines"), there are jobs in the national economy she can perform. Thus, the Commissioner concluded that Smith is not disabled within the meaning of the Act.

SMITH'S ASSERTIONS OF ERROR. Are the Commissioner's findings supported by substantial evidence on the record as a whole? Smith thinks not and appears to advance a number of reasons why, only one of which the Court will address in detail.[2]

---

[2]

In addition to the one reason the Court will address in detail, Smith maintains that the Commissioner erred in finding that she does not have an impairment or combination of impairments that meet or equal a listed impairment. Substantial evidence on the record as a whole supports the Commissioner's findings at steps two and three.

At step two, the Commissioner identified Smith's back impairment as degenerative disk disease and spondylosis of the lumbosacral spine and found that it is severe but that her other impairments, i.e., emphysema and/or shortness of breath, arthritis, and hypertension, are not severe. The medical evidence establishes that the Commissioner properly characterized her back impairment and that it is severe. With regard to her emphysema and/or shortness of breath and arthritis, there is little medical evidence to support the existence of the impairments. Smith undoubtedly has hypertension, but it appears to be controlled by medication. It is also worth noting that Winston made no mention of her emphysema and/or shortness of breath, arthritis, and hypertension in offering his opinions of her medical condition. See Transcript at 280, 327.

At step three, the Commissioner found that Smith's back impairment does not meet or equal a listed impairment. The medical evidence establishes that the Commissioner properly found that it did not because there is no medical evidence that her impairment meets or equals all of the specific medical criteria of Listings 1.02 or 1.04. Listing 1.02 is the listing for the major dysfunction of a joint and requires a showing of, inter alia, an inability to ambulate effectively. Although her ability to walk may be limited by the restrictions imposed by her impairment, there is no medical evidence that the impairment is so extreme that it renders her unable to ambulate effectively. Listing 1.04 is the listing for disorders of the spine and requires a showing of, inter alia, compression of a nerve root or the spinal cord. There is no medical evidence of compromise of a nerve root or the spinal cord.

SMITH'S RESIDUAL FUNCTIONAL CAPACITY.  Smith maintains that her residual functional capacity was erroneously assessed.  Residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations."  See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004).  The assessment is made using all of the relevant evidence in the record and must be supported by "medical evidence that addresses [the person's] ability to function in the workplace."  See Id. at 539.

The Commissioner found that Smith's residual functional capacity is such that she can perform the full range of sedentary work.  In so finding, the Commissioner discounted Winston's two opinions and discounted her complaints of pain.

With regard to Winston's two opinions, the record reflects that on January 7, 2003, he offered an opinion that simply provided the following: "Sheila Smith is unable to perform her job duties due to her illness."  See Transcript at 327.  On September 20, 2005, he offered a second opinion that provided the following:

> I have provided medical treatment to ... Smith regarding her medical conditions.  The following is a list of [her] conditions that relate to her health injuries:
>
> 1. Severe Back Pain (Annular tears and disc bulging at L4/5 and L5/S1).
>
> It is my opinion based upon the above injuries and her age, education and work experience, that ... Smith is unable to [engage] in any substantial gainful employment because of the above medical conditions for a period of time lasting and expecting to last for a period of twelve months.  I hope this is helpful for ... Smith, due to the fact that she has serious health conditions that preclude her doing any type of work.

See Transcript at 280. The Commissioner discounted both opinions because they contained conclusions and were not supported by medically accepted laboratory and diagnostic techniques. Smith maintains that the Commissioner's treatment of the opinions was erroneous because they were not given proper weight.

Winston's opinions are not automatically controlling because the record must be evaluated as a whole. His opinions should be given controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record.'" See Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006) [quoting 20 C.F.R. 404.1527(d)(2)].[3]

With regard to the opinion Winston offered in January 7, 2003, it obviously contains a conclusion, i.e., "... Smith is unable to perform her job duties due to her illness," see Transcript at 327, that is not well-supported by medically acceptable clinical and laboratory diagnostic techniques. The Court has no idea what evidence he relied upon in offering the conclusion because he made no mention whatsoever of any evidence. In addition, there is nothing in the record to indicate that he knows of the demands required by her job duties nor did he specifically identified her allegedly disabling illness.

---

[3] The deference generally accorded a treating physician's opinion is premised, at least in part, on the idea that "'the treating physician is usually more familiar with a claimant's medical condition than are other physicians ...'" See Thomas v. Sullivan, 928 F.2d 255, 259 n.3 (8th Cir. 1991) [quoting Schisler v. Heckler, 787 F.2d 76, 81 (2nd Cir. 1986).

With regard to the opinion Winston offered in September 20, 2005, it appears as if it were written to conform to the requirements of the Act. The opinion tracks the definition of disability found in the Act and purports to be based, in part, upon his knowledge of Smith's education, work experience, and the demands required by all types of work. There is nothing in the record to indicate that he knows of either her education or work experience. In addition, there is nothing in the record to indicate that he knows of the demands required by all types of work.

Third, with regard to both opinions, they contain conclusions that are within the exclusive province of the Commissioner. The question for the Commissioner, and the Commissioner alone, is whether Smith's back impairment and the pain it causes are disabling for purposes of the Act.

Notwithstanding the foregoing, though, it appears that the Commissioner did not discount Winston's specific medical finding offered in his September 20, 2005, opinion. Winston opined that Smith has severe back pain caused by "[a]nnual tears and disc bulging at L4/5 and L5/S1." See Transcript at 280. His finding is consistent with the findings made by Dr. Edward Saer, see Transcript at 195-199, and Dr. Sunder Krishnan, see Transcript at 200-213, both of whom found evidence of an annual tear and disc bulging at L4/5 and L5/S1. The Commissioner did not discount Winston's specific medical finding because the Commissioner too found evidence of a small annual tear at L5-S1 and bulging disks at L4-5 and L5-S1. See Transcript at 16.

For this reason, the Court finds that the Commissioner's treatment of Winston's opinions was not erroneous. Although the Commissioner purported to have discounted Winston's opinions, the Commissioner merely discounted the conclusions contained therein and not the specific medical finding offered in his September 20, 2005, opinion.

What, then, of Smith's complaints of pain. The record reflects that the Commissioner discounted her complaints because they were "inconsistent with objective medical evidence and other evidence of record." See Transcript at 18. Smith maintains that the Commissioner's treatment of her complaints was deficient because the findings as to her credibility were based almost entirely upon the medical evidence, which she maintains is expressly prohibited by Polaski v. Heckler, 739 F.2d 943 (8th Cir. 1984).

In Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001), the Court of Appeals provided the following guidance in evaluating a claimant's complaints of pain:

> ... Before determining a claimant's [residual functional capacity], the [Commissioner] first must evaluate the claimant's credibility. In evaluating subjective complaints, the [Commissioner] must consider, in addition to objective medical evidence, any evidence relating to: a claimant's daily activities; duration, frequency and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. See Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).

"The [Commissioner] is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." See Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004).

The record reflects that the Commissioner cited <u>Polaski</u> and thoroughly considered the medical evidence, which, contrary to Smith's assertion, is not prohibited by <u>Polaski</u>. Instead, the medical evidence is just one factor to consider in assessing a claimant's credibility. The Commissioner also briefly mentioned some of Smith's daily activities and the fact that she applied for and received unemployment compensation. Although the Commissioner noted that all of the <u>Polaski</u> factors were considered, there is no written evidence that they were. There is no written evidence that the Commissioner gave thorough consideration to her daily activities or considered the duration, frequency and intensity of her pain; the dosage and effectiveness of her medication; any precipitating and aggravating factors; and any functional restrictions.

The Commissioner's analysis was cursory at best. It matters not that it was brief or that it did not mention all of the <u>Polaski</u> factors. The analysis must, however, contain specific reasons supported by the evidence and must be sufficiently specific to make clear to the claimant and to any subsequent reviewers the weight the Commissioner gave to the claimant's statements and the reasons for that weight. The Commissioner's analysis accomplished none of those ends. The analysis was little more than a conclusory statement that Smith's subjective complaints were considered.[4]

---

[4]
"An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably had no practical effect on the outcome of the case." See <u>Brown v. Chater</u>, 87 F.3d 963, 966 (8th Cir. 1996) [internal quotation omitted]. Assuming that the Commissioner's written decision is deficient because it contains a cursory analysis of Smith's subjective complaints, the Court cannot find that the deficiency had no practical effect on the outcome of the case.

Smith is undoubtedly experiencing lower back pain, and there is a likely medical explanation for her pain, i.e., a small annual tear at L5-S1 and bulging disks at L4-5 and L5-S1. The critical question in this instance is the degree of pain she is experiencing; the answer to that question will likely decide the outcome.[5] Thus, it is absolutely critical that the Commissioner give thorough, written consideration to her complaints of pain, consideration that conforms to the requirements of Polaski. Because the Commissioner failed to do so, a remand is necessary.

CONCLUSION. For the foregoing reason, the Commissioner's findings are not supported by substantial evidence on the record as a whole. Specifically, the Commissioner failed to properly analyze Smith's complaints of pain, and a remand is therefore necessary. Upon remand, the Commissioner shall analyze her complaints of pain in conformity with Polaski. Given the likelihood that this will also impact the determination of whether her non-exertional impairment diminishes or significantly limits her residual functional capacity, the Commissioner should reconsider the use of the Guidelines and consider soliciting the testimony of a vocational expert. Accordingly, the Commissioner's decision is reversed, and this proceeding is remanded. This remand is a "sentence four" remand as that phrase is defined in 42 U.S.C. 405(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991). Judgment will be entered for Smith.

---

[5] "As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is." See Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) [quoting Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir.1991)].

IT IS SO ORDERED this   10   day of July, 2009.


                                                                     UNITED STATES MAGISTRATE JUDGE

-11-